# Richmond

C. H. Lamb, Acting Commissioner of the Division of Motor Vehicles of the Commonwealth of Virginia v. Lawrence I. Driver, Jr.

October 11, 1954.

Record No. 4317.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General* and *D. Gardiner Tyler, Assistant Attorney General*, for the appellant.

*Lawrence I. Driver, Jr.*, for himself.

Miller, J., delivered the opinion of the court.

On June 16, 1953, C. H. Lamb, Acting Commissioner of the Division of Motor Vehicles, hereinafter called Commissioner, received from the clerk of the Hustings Court of the City of Petersburg, Virginia, an abstract of conviction which stated that Lawrence I. Driver, Jr., had been convicted in that court on April 10, 1952, of a felony, *i. e.*, grand larceny of an automobile. Though this certificate was not sent to the Commissioner until fourteen months after Driver's conviction, it recites that it was filed "as required by section 46-414 of the Code of Virginia 1950."

It also appears from an agreed statement of facts filed as a part of the record that Driver was convicted of "the grand larceny of an automobile, said conviction amounting to a felony. * * * ." Yet nowhere in the record is it disclosed how or by what means the larceny of the automobile was effected.

After serving the sentence imposed upon him for theft of the automobile, and some additional time for a non-related offense, Driver was released from custody on February 9, 1953.

Upon receipt of the abstract of conviction the Commissioner, under authority of § 46-416 and § 46-426, Code of 1950, entered an order revoking Driver's license to operate a motor vehicle in Virginia for a period of "one year from June 16, 1953," and his registration certificates and plates for a similar length of time, and until he gave "proof of financial responsibility for the future." When notice of this revocation was received, Driver instituted this suit in equity and charged that the revocation was illegal and prayed that the Commissioner be required to reinstate his registration plates and driver's license. From a final decree granting the relief prayed for and perpetually enjoining the Commissioner from revoking Driver's license and registration plates because of his conviction on April 10, 1952, the Commissioner sought and obtained an appeal.

Section 46-416, Code of 1950[1], provides that the license of any person to operate a motor vehicle in the State of Virginia shall be revoked for a period of one year upon receipt by the Commissioner of a record of his conviction of " * * * (4) Any crime punishable as a felony under the motor vehicle laws of this State or any other felony in the commission of which a motor vehicle is used; * * * "

If an operator's license is revoked under § 46-416, then the Commissioner is empowered by § 46-426 to suspend or revoke his right to a registration certificate and plates until he furnishes "proof of financial responsibility;" however, such suspension or revocation is not to exceed five years.

It is not claimed by the Attorney General that the offense of grand larceny of a motor vehicle is a "crime punishable as a felony *under the motor vehicle laws of this State * * * ,*" but it is contended that the stolen automobile was

---

[1] The Commissioner shall forthwith revoke, and not thereafter reissue during the period of one year, the license of any person, resident or nonresident, upon receiving a record of his conviction of any of the following crimes, committed in violation of either a State law or of a valid town, city or county ordinance paralleling and substantially conforming to a like State law and to all changes and amendments of it:

(1) Voluntary or involuntary manslaughter resulting from the operation of a motor vehicle;

(2) Violation of the provisions of § 18-75 or § 18-78, or violation of a valid town, city or county ordinance paralleling and substantially conforming to §§ 18-75 to 18-79;

(3) Perjury or the making of a false affidavit to the Division under this chapter or any other law of the State requiring the registration of motor vehicles or regulating their operation on highways, or the making of a false statement to the Division on any application for an operator's or chauffeur's license.

(4) Any crime punishable as a felony under the motor vehicle laws of this State or any other felony in the commission of which a motor vehicle is used;

(5) Two charges of reckless driving, or forfeiture of bail upon two charges of reckless driving, when the offenses upon which they are based were committed within a period of twelve consecutive months; or

(6) Failure to stop and disclose his identity at the scene of the accident, on the part of a driver of a motor vehicle involved in an accident resulting in the death of or injury to another person.

*"used"* in the commission of the felony of grand larceny. (Emphasis added.)

The vital and controlling question presented is whether or not the record, which discloses only that Driver was convicted of the crime of grand larceny of an automobile, establishes that he has been convicted of the commission of a felony "in which a motor vehicle is used." Otherwise stated, can it be held that Driver committed a felony in which a motor vehicle was used when all that is shown by the record is that he was convicted of the grand larceny of an automobile?

The key and controlling word in subsection 4 of § 46-416 is "used."

Broadly stated, the word "used" means operated, employed or utilized. Webster's New International Dictionary, 2d ed., page 2806. *Treolo* v. *Iroquois Auto Ins. Underwriters*, 348 Ill. 93, 180 N. E. 575; *Miller* v. *Franklin County*, 302 Ky. 652, 195 S. W. (2d) 315; 43 Words and Phrases, Perm. ed., page 460, *et seq.*; and 1954 Cum. Supp., page 113.

"The word 'use' is employed in more than one sense. In ordinary conversation the word may be, and sometimes is, employed in the sense of 'operate' where a motor vehicle is concerned. But it is also employed in the sense of putting to service." *Challis, et al.* v. *Commercial Standard Ins. Co.*, 117 Ind. App. 180, 182, 69 N. E. (2d) 178, 179.

"The verbs 'use' and 'operate' are of overlapping significance and draw import from the context." *Cronan* v. *Travelers Indemnity Co.*, 126 N. J. L. 56, 58, 18 A. (2d) 13, 14.

It is apparent that the word "used" as employed in subsection 4 of § 46-416 is colored by its context and that its meaning is influenced by the purpose of the act, which is to remove from the highways those drivers who endanger the public and who operate motor vehicles in the perpetration of serious crimes. In this context it means that the person whose license is sought to be revoked "operated," "drove," or "ran" a motor vehicle in committing a felony.

In *Bailey, et al.* v. *State*, 150 Tenn. 598, 599, 601, 266 S. W. 122, the court was called upon to decide whether or not Bailey and his companions were guilty of violating Chapter 28 of the Acts of 1911, which provided:

" 'That it shall be unlawful for any chauffeur or any other person to use the automobile of another without the owner's permission or consent.' "

In stating the case and holding that the proved facts did not constitute a violation of that statute, the court said:

"Mattox left his car at Indian Grave Gap on top of Unaka Mountain, and while he and his family were away plaintiffs in error pushed it across the road, whether intending to use it does not appear, lost control, and it ran 300 feet into a gulch. * * *

"The plaintiffs in error were passing along the road, and, according to the evidence, pushed the car across the road, when it escaped from their control and ran into the gulch. They did not drive the car nor use it; they cannot be convicted of an attempt to use, under the act of 1911."

It does not appear from the record that Driver either operated, drove or ran the stolen automobile, or any other motor vehicle, when he perpetrated the theft. We may not assume that he did operate, drive or run a motor vehicle solely because it is proved that an automobile was the subject of the larceny. Simply because an automobile was stolen, it does not necessarily follow that it or any other motor vehicle has been run, operated or driven, and thus "used" in effecting the crime. We are not permitted to assume that the crime was accomplished by moving the vehicle under its own power and so establish the necessary fact that it was "used" to commit the crime of larceny. The vital fact that it was "used" within the meaning of the statute cannot be supplied by surmise or assumption.

For the reasons stated the judgment of the trial court is affirmed.

*Affirmed.*