## Olmstead License

*Goldberg, Evans, Katzman & Watkins*, for appellant.

*John P. Harrington*, Deputy Attorney General, for Secretary of Revenue.

SHELLEY, J., August 20, 1962.—This is an appeal by Dale C. Olmstead (hereinafter referred to as "petitioner") from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania (hereinafter re-

ferred to as the "secretary") suspending his license to operate a motor vehicle for a period of six months. There was a hearing on the matter before the court on June 25, 1962.

### Findings of Fact

1. Petitioner resides on Lumber Street, Borough of Highspire, Dauphin County, Pennsylvania.

2. Petitioner is the holder of a valid motor vehicle operator's license issued by the Commonwealth of Pennsylvania.

3. On September 29, 1961, an "abstract of court record of violation of the Vehicle Code" was received by the Secretary from the Clerk of Courts of Lycoming County, Pennsylvania, certifying that petitioner, on September 19, 1961, pleaded guilty to the offense of "fraudulent removal of motor vehicle contrary to section 1219 of the Vehicle Code, Article 12, Act 32, P. L. 1959": The Vehicle Code of April 29, 1959, P. L. 58, sec. 1219, 75 PS §1219.

4. On April 3, 1962, petitioner's privilege to operate a motor vehicle in this Commonwealth was suspended for a period of six months.

5. Petition to review suspension order was filed in this court on April 2, 1962, at which time an order was made allowing appeal, and the order of suspension was suspended until final determination of the matter.

We have set forth our findings of fact in accordance with directions of the Supreme Court in Commonwealth v. Etzel, 370 Pa. 253, 258 (1952).

A review of the cases indicates clearly that this matter is before this court de novo, and it is for the court to determine from the evidence produced before it whether appellant should be deprived of his license to drive an automobile for a period of time: Commonwealth v. Garman, 361 Pa. 643, 645 (1949), and the cases therein cited.

Petitioner submits as grounds for reversing the order of the secretary that the misdemeanor of which he, petitioner, was convicted, fraudulent removal of automobile, is not a "misdemeanor . . . in the commission of which a motor vehicle . . . was used . . ." as provided for in section 618(a)(2) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §618, as amended.

We have been unable to find any Pennsylvania appellate court decisions relevant to the proper interpretation of section 618(a)(2) of the Act of April 29, 1959, supra. There is, however, a well-reasoned and considered rationale of the problem in an opinion by the appellate court of Virginia on the subject.

In Lamb v. Driver, 196 Va. 393, 83 S. E. 2d 741 (1954), it appears that the licensee was convicted of grand larceny of an automobile. The Commissioner of Motor Vehicles of Virginia received notice of the same and revoked the license under a Virginia statute which provided that such could be done "upon receipt by the Commissioner of a record of his conviction of '. . . (4) Any crime punishable as a felony under the motor vehicle laws of this state or any other felony in the commission of which a motor vehicle is used.' "

Except for the fact that a felony was involved, the pertinent Virginia statute is, in the words vital to this case, identical to section 618(a)(2) of the Act of 1959, supra, which allows the secretary to suspend "upon receiving a record of proceedings . . . (2) that such person has been convicted of a misdemeanor . . . in the commission of which a motor vehicle or tractor was used."

In the Virginia case, the State contended that the stolen automobile was "used" in the commission of the felony of grand larceny. The court posed as the controlling question the meaning of the word "used." After a complete discussion, the court concluded:

"It is apparent that word 'used' as employed in subsection (4) of [Act] is colored by its context and that its meaning is influenced by the purpose of the act, which is to remove from the highways those drivers who endanger the public and who operate motor vehicles in the perpetration of serious crimes. In this context it means that the person whose license is sought to be revoked 'operated', 'drove', or 'ran' a motor vehicle in committing a felony."

Thus, "used" in the statute carries the connotation of "operated."

The court then continued, at page 397 (83 S. E. 2d at 744), as follows:

"It does not appear from the record that Driver either operated, drove or ran the stolen automobile, or any other motor vehicle, when he perpetrated the theft. We may not assume that he did operate, drive or run a motor vehicle solely because it is proved that an automobile was the subject of the larceny. Simply because an automobile was stolen, it does not necessarily follow that it or any other motor vehicle has been run, operated or driven, and thus 'used' in effecting the crime. We are not permitted to assume that the crime was accomplished by moving the vehicle under its own power and so establish the necessary fact that it was 'used' to commit the crime of larceny. The vital fact that it was 'used' within the meaning of the statute cannot be supplied by surmise or assumption."

In the appeal before us, while the record shows the object of the crime, it does not contain any evidence that a vehicle was used in the commission of a crime. The language of section 1219 of the Act of 1959, supra, to which petitioner pleaded guilty, contains no element implying that petitioner operated, drove or ran the vehicle. The record of petitioner's conviction of section 1219 is silent as to the means employed by petitioner in obtaining the vehicle from the garage, and we can-

not assume any facts that do not appear in the record.

For the reasons set forth above we make the following

### Order

And now, August 20, 1962, petitioner's appeal is sustained, and the order of the Secretary of Revenue suspending appellant's license for a period of six months is reversed. The secretary is directed to restore to applicant his operator's license.